**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HEMANT G. BHIMNATHWALA, | : | |
| Plaintiff, | : | Civil Action No. 19-21389 (FLW) (LHG) |
| v. | : | |
| NEW JERSEY STATE JUDICIARY, FAMILY DIVISION, et al., | : | **OPINION** |
| Defendants. | : | |

**WOLFSON, Chief Judge:**

*Pro se* Plaintiff Hemant G. Bhimnathwala ("Plaintiff") has filed a Complaint against Defendants Lopa Shah ("Shah"); the State of New Jersey Judiciary, improperly pled as the New Jersey State Judiciary, Family Division (the "New Jersey Judiciary"); the Honorable Stuart Rabner, Chief Justice of the New Jersey Supreme Court; the Honorable Lisa P. Thornton, A.J.S.C.; the Honorable Teresa Ann Kondrup-Coyle, J.S.C.; the Honorable Honora O'Brien Kilgallen, J.S.C.; Tonya Hopson; Rebekah Heilman; and Joanne McLaughlin (collectively, the "State Defendants),[1] alleging that his constitutional rights were violated in the course of his divorce in the New Jersey Superior Court, Monmouth Vicinage.  Before the Court are Plaintiff's Motion for Summary Judgment against Shah, his former wife, and for Default Judgment against the State Defendants; the State Defendant's Cross-Motion to Vacate Default and Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6); and Shah's Motion to Dismiss.

---

[1]     The Court refers to Chief Justice Rabner, Judge Thornton, Judge Kondrup-Coyle, Judge Kilgallen, Hopson, Heilman, and McLaughlin, collectively, as the "Individual State Defendants."

For the reasons set forth herein, Plaintiff's Motion for Default Judgment against the State Defendants is **DENIED,** and the State Defendants Cross-Motion to Vacate and Dismiss the Complaint is **GRANTED**.  Plaintiff's Motion for Summary Judgment against Shah is **DENIED**. Shah's Motion to Dismiss is **GRANTED**. Plaintiff's claims are **DISMISSED** in their entirety.

## I.    BACKGROUND AND PROCEDURAL HISTORY

For the purposes of these motions, the Court accepts as true the relevant facts gleaned from Plaintiff's Complaint and the documents attached thereto.

This action stems from divorce proceedings in the Superior Court of New Jersey, Monmouth County, between Plaintiff and his former wife, Shah.  Plaintiff and Shah separated in March 2006, and it appears that both filed for divorce later that year.  (*See* Compl. ¶¶ 11, 44.) Judge Kilgallen presided over the divorce proceedings, and a final Judgment of Divorce ("JOD") was entered on February 27, 2008.  (*Id.* ¶¶ 12, 14.)  Incorporated into the JOD was a matrimonial settlement agreement ("MSA"), which provided primary custody of Plaintiff's two children to Shah and provided for certain parenting time for Plaintiff.  (*See id.* ¶¶ 12, 15, 122.)  It appears that McLaughlin, a Family Counseling Specialist in the Monmouth County Vicinage Family Court, was involved in Plaintiff and Shah's mediation and the negotiation of the terms of the MSA.  The MSA has since been enforced in a number of post-judgment proceedings.

Pursuant to the terms of the MSA, Plaintiff and Shah were to split custody of their children equally during the children's winter break.  (*Id.* ¶ 102.)  In the winter of 2009, Shah wanted to take the children to India for the entirety of winter break.  (*Id.*)  Plaintiff objected to the trip because it would cause him to lose his parenting time.  (*Id.*)  While unclear from the Complaint, it appears that Plaintiff filed a motion related to this dispute and, in response, Judge Kilgallen ruled that Shah could take the children to India for the entirety of their winter break.  (*Id.*)

Thereafter, in March 2010, Plaintiff filed a motion to renegotiate the financial settlement set forth in the MSA in light of changed financial circumstances resulting from the 2008 recession. (*Id.* ¶ 103.)   It appears that Judge Thornton[2] presided over this motion and, following oral argument, denied Plaintiff's application.  (*Id.* ¶ 106.)  Plaintiff alleges that Judge Thornton did not provide any reasoning for her decision.  (*Id.*)

Plaintiff also alleges that on November 7, 2018, Judge Kondrup-Coyle denied his motion to enforce his rights under the MSA, to have his youngest child visit him in Chicago for Thanksgiving break.  (*Id.* ¶ 108.)  Plaintiff alleges that he had purchased tickets for his child's visit in January 2018, and thereafter, in the summer of 2018, Shah informed Plaintiff that the child would not be spending Thanksgiving with him.  (*Id.* ¶ 109.)  Thus, on August 17, 2018, Plaintiff filed a motion to enforce the MSA.  (*Id.* ¶ 110.)  Plaintiff alleges that Judge Kondrup-Coyle did not issue an order resolving the motion until November 7, 2018, which, he claims, deprived him of the opportunity to appeal her decision.  (*Id.* ¶ 112.)

Following Judge Kondrup-Coyle's denial of Plaintiff's motion, Plaintiff mailed a letter to Hopson, the Chief EEO/AA officer for the New Jersey Judiciary.  (*Id.* ¶ 114.)  Plaintiff alleges that Hopson is responsible for "addressing violations of the anti-discrimination policy of the State of New Jersey Judiciary."  (*Id.*)  In his November 2018 letter, Plaintiff alleged that fathers suffer systemic discrimination by New Jersey Family Court judges and, further, claimed that Judge Kondrup-Coyle intentionally discriminated against him by ruling in favor of Shah.  (*See id.* ¶¶ 112, 115.)  Hopson responded to Plaintiff via letter dated March 20, 2019, and stated that these issues "fall outside the authority of her office."  (*Id.* ¶ 115.)  Plaintiff claims that following his receipt of

---

[2]     Confusingly, Plaintiff alleges that Judge Kilgallen also considered the March 2010 motion and denied it on the grounds "that the court did not keep a copy of the MSA."  (Compl. ¶ 103.)

this letter, he received a telephone call from Heilman, an ombudsman in the Monmouth County Family Court.  (*Id.* ¶ 126.)   Plaintiff claims that Heilman "declared that there was no discrimination," based on her understanding that women have also complained that "the court was unfair."  (*Id.*)  Plaintiff contends that this call was intended to "dissuade [him] from filing any appeal or seeking relief in federal courts."  (*Id.*)  On December 5, 2018, Plaintiff mailed a similar letter to Chief Justice Rabner, in which Plaintiff complained of alleged "systemic" discrimination against fathers.  (*Id.* ¶ 117.)  Plaintiff alleges that on December 12, 2018, he received a letter from the New Jersey Supreme Court Clerk's office denying any involvement.  (*Id.*)

Plaintiff filed the instant Complaint on December 12, 2019.  (*See* Compl.)   In the Complaint, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for violation of his constitutional rights.   Plaintiff alleges that, pursuant to the Equal Protection Clause of the Fourteenth Amendment, he had the right to equal parenting time on par with that received by Shah.[3]  (*Id.* ¶ 81.)  Plaintiff contends that the State Defendants deprived him of that right by consistently ruling in favor of Shah in resolving their divorce and post-judgment custody disputes.   (*See id.*) Accordingly, Plaintiff seeks the following relief:  (1) compensatory damages for emotional distress and damage to his reputation; (2) repayment of all child support paid to Shah, including interest; (3) recalculation of the amount of alimony that Shah should pay to Plaintiff; (3) compensation for Plaintiff's loss of parenting time; (4) an injunction requiring the New Jersey Judiciary to address

---

[3]      Specifically, Plaintiff contends that the Supreme Court's decision in *Obergefell v. Hodges*, 576 U.S. 644 (2015), which held that same-sex couples may not be denied the fundamental right to marry under the Due Process and Equal Protection clauses of the Fourteenth Amendment, also applies to child custody and child support.  Thus, Plaintiff asserts, without any legal basis, that the Fourteenth Amendment requires a presumption of equal, joint custody of children in child custody proceedings.  (*See* Compl. ¶ 24.)

gender based discrimination in divorce and child custody matters and to publish statistical data to that effect; (5) punitive damages; and (6) costs and reasonable attorney fees. (*Id.* at 35–36.)

On April 12, 2020, Plaintiff filed a request for default against the State Defendants for their failure to file an answer or otherwise respond to the Complaint. (ECF No. 7.) The Clerk of the Court entered default on April 13, 2020. On January 17, 2020,[4] Shah, acting *pro se*, filed a letter responding to the Complaint and requesting that it be dismissed. (ECF No. 10.) On May 20, 2020, Plaintiff filed a motion for default judgment against the State Defendants and for summary judgment against Shah. (ECF No. 12.) In opposition, the State Defendants filed a cross-motion to vacate default and to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6). (ECF No. 24.)

## II.   STANDARD OF REVIEW

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a proceeding for lack of subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), including lack of jurisdiction due to Eleventh Amendment immunity. As the Third Circuit has explained "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100, 1 (1984)). Once a Rule 12(b)(1) challenge is raised, the plaintiff bears the burden of demonstrating the existence of subject matter jurisdiction. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006). A Rule 12(b)(1) motion to dismiss is treated as either a "facial or factual challenge to the court's subject matter

---

[4]     While Shah's letter response is dated January 17, 2020, it was not docketed by the Clerk of the Court until April 29, 2020.

jurisdiction." *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  Under a facial attack, such as here, the movant challenges the legal sufficiency of the claim, and the court considers only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Id.*

### B.  Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted).  Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*,

515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotations and brackets omitted).

Here, Plaintiff is proceeding *pro se*. "The obligation to liberally construe a pro se litigant's pleadings is well-established." *Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 52021 (1972). "Courts are to construe complaints so as to do substantial justice, keeping in mind that pro se complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (internal quotation marks and citation omitted). "Liberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). In that regard, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245

(3d Cir. 2013). "Even a pro se complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282.

## III.   DISCUSSION

### A.  State Defendant's Motion to Vacate Default and Plaintiff's Motion for Default Judgment

First, Plaintiff seeks default judgment against the State Defendants who, he alleges, failed to file an answer or otherwise respond to the Complaint. The State Defendants, in turn, move to set aside default because (1) they were not properly served with the Complaint and (2), if the Court determines service was proper, good cause exists to vacate default.

Pursuant to Federal Rule of Civil Procedure 55(c), a court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c); *see also Mrs. Ressler's Food Prods. v. KZY Logistics, LLC*, 675 F. App'x 136, 139 (3d Cir. 2017). In considering whether to vacate default, a court should consider (1) whether the plaintiff will be prejudiced by a vacatur of default, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's culpable conduct led to the entry of default. *See Feliciano v. Reliant Tooling, Co.*, 691 F.2d 653, 656 (3d Cir. 1982); *see also Sourcecorp Inc. v. Croney*, 412 F. App'x 455, 459 (3d Cir. 2011). However, an entry of default may be set aside without consideration of these factors where the entry of default was improper. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985); *Mettle v. First Union Nat. Bank*, 279 F. Supp. 2d 598, 603 n.3 (D.N.J. 2003) ("As this Court finds that entry of default against First Union is void based on the improper service of the summons and complaint, the Court need not consider the facts set forth in *Gold Kist*."). Where default was entered without proper service of the complaint, it is "*a fortiori* void, and should be set aside." *Gold Kist, Inc.*, 756 F.2d at 19; *see also Grand Entertainment Grp. v. Star Media Sales, Inc.*, 988 F.2d 476, 493

(3d Cir.1993) (finding that district court improperly entered default where defendants had not been properly served); *Anderson v. Mercer Cty. Sheriff's Dept.*, No. 11-7620, 2013 WL 5703615, at *3 (D.N.J. Oct. 17, 2013).

The Court first assesses whether the Individual State Defendants, *i.e.*, Chief Justice Rabner; Judge Thornton, Judge Kondrup-Coyle, Judge Kilgallen, Hopson, Heilman, and McLaughlin, were properly served.  Federal Rule of Civil Procedure 4(e) provides that an individual may be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P 4(e)(1)–(2).[5]  Because Plaintiff sues the Individual State Defendants in both their individual and official capacities, he is required to properly serve the defendants in both capacities. *See Micklus v. Carlson*, 632 F.2d 227, 240 (3d Cir. 1982) ("Micklus concedes that the requirements of Rule 4(d)(1) were not met.  He nevertheless argues that once Carlson was properly served in his

---

[5]     The New Jersey Court Rule that governs service of an individual is modeled after Rule 4(e) and provides that to serve "a competent individual if the age of 14 or older," the summons and complaint shall be delivered "to the individually personally, or by leaving a copy thereof a the individual's dwelling or usual place of abode with a competent member of the household of the age of 14 or older then residing therein, or by delivering a copy thereof to a person authorized by appointment or by law to receive service of process on the individual's behalf."  N.J. Ct. R. 4:4-4(a)(1).

official capacity, he was properly before the court in both individual and official capacities.  We reject this argument." (citation omitted)); *see also Dougherty v. Dupes*, No. 17-1541, 2018 WL 1696651, at *9 (M.D. Pa. Apr. 6, 2018) ("Jared Dupes is sued in his individual capacity and his 'supervisory capacity,' which the court interprets to mean individual and official capacities.  Thus, service of original process must be made on Jared Dupes in both of these capacities.").

Plaintiff served Judge Thornton, Judge Kondrup-Coyle, Judge Kilgallen, Heilman, and McLaughlin by leaving copies of the summons and Complaint with Bidwell Medley, an Operations Specialist, at the Monmouth County Superior Court in Freehold, New Jersey.  (*See* ECF No. 6.)  Plaintiff additionally sent the summons and Complaint to these Defendants by certified mail to the Monmouth County Superior Court.  (*See id.*)  However, this service does not comply with either Rule 4 or the New Jersey Court Rules for service of an individual.  The Rules require that an individual be served by either delivering a copy of the summons and complaint to the individual personally, leaving a copy with a suitable individual at their dwelling, or delivering a copy to an agent authorized to receive service of process.  *See* Fed. R. Civ. P. 4(e).  Furthermore, Defendants contend, and Plaintiff does not refute, that Medley is not authorized to receive service of process on behalf of these Defendants.  Accordingly, I find that Judge Thornton, Judge Kondrup-Coyle, Judge Kilgallen, Heilman, and McLaughlin were not properly served in either their individual or official capacities.

Nor were Chief Justice Rabner and Hopson properly served.  Plaintiff served Chief Justice Rabner by leaving a copy of the summons and Complaint with Dawn Bronston, a "judiciary clerk," at the Richard J. Hughes Justice Complex in Trenton, New Jersey.  (ECF No. 6.)  Plaintiff served Hopson by leaving the summons and Complaint with Deanna Williams, also a "judiciary clerk," at the Richard J. Hughes Justice Complex.  Again, this service did not comply with the rules for

serving an individual as there is no indication that Bronston and Williams were authorized to accept service on behalf of Chief Justice Rabner and Hopson, respectively. Therefore, I find that Chief Justice Rabner and Hopson were not properly served with the summons and Complaint.

Finally, the Court finds that Plaintiff similarly failed to properly serve the New Jersey Judiciary. Federal Rule of Civil Procedure 4(j) states that

> A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:
>
> (A) delivering a copy of the summons and of the complaint to its chief executive officer; or
>
> (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

The New Jersey Court Rules provide that public bodies, other than the State of New Jersey itself, are to be served by delivering "a copy of the summons and complaint in the manner prescribed by paragraph (a)(1) of this rule on the presiding officer or on the clerk or secretary thereof." N.J. Ct. R. 4:4-4(a)(8). Here, Plaintiff served the New Jersey Judiciary by sending a copy of the summons and complaint to the Honorable Glenn A. Grant, J.A.D., the Acting Administrative Director of the New Jersey Courts, by certified mail and by leaving a copy of the summons and complaint with Dawn Bronston, a "judiciary clerk" at the Hughes Justice Complex. (ECF No. 6, at 15; ECF 6-1, at 19.) However, neither of these attempts effectuated proper service on the New Jersey Judiciary as Plaintiff did not personally serve Judge Grant nor is there any indication the Bronston was authorized to accept service on his behalf.

Accordingly, because Plaintiff failed to properly serve the State Defendants, the Court vacates the default entered against them.[6]  *See Anderson*, 2013 WL 5703615, at *2.  Because the Court vacates the default against the State Defendants, Plaintiff's Motion for Default Judgment is denied as moot.

### B.  State Defendants' Motion to Dismiss

The State Defendants additionally seek dismissal of Plaintiff's Complaint with prejudice for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).

### 1.  Lack of Subject Matter Jurisdiction

The State Defendants contend that this Court lacks subject matter jurisdiction over Plaintiff's claims against the New Jersey Judiciary and against the Individual State Defendants in their official capacities based on Eleventh Amendment sovereign immunity and because they are not "persons" under section 1983.[7]

---

[6]     Because default was improperly entered against the State Defendants, the Court need not consider the factors for vacating default.  *See Anderson*, 2013 WL 5703615, at *2 ("[A]n entry of default may be set aside by the court without consideration of these factors if the default was improperly entered.").  Nonetheless, even if the Court were to consider the factors, they would weigh in favor of vacating the default entered against the State Defendants.  First, Plaintiff has not demonstrated that he would suffer any prejudice if default was vacated.  Second, as set forth below, the State Defendants have meritorious defenses to Plaintiff's claims.  And, finally, the State Defendant's failure to timely respond to the Complaint was not the result of culpable conduct but, rather, was the result of Plaintiff's failure to properly serve them.

[7]     The State Defendants, in a facial challenge to subject-matter jurisdiction, further contend that the Court lacks subject-matter jurisdiction over Plaintiff's Complaint pursuant to the *Rooker-Feldman* doctrine.  The *Rooker-Feldman* doctrine bars federal courts from hearing "controversies that are essentially appeals from state-court judgments."  *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014).  "*Rooker-Feldman* . . . is a narrow doctrine, confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (quotation marks and citation omitted).  The *Rooker-Feldman* doctrine does not apply to Plaintiff's claims, however, because he is not seeking a review of the state court's

State sovereign immunity under the Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Wright v. N.J. Dep't of Educ.*, 115 F. Supp. 3d 490, 494 (D.N.J. 2015). The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. In other words, the Amendment afford states and state agencies immunity from suits brought by citizens in federal court, regardless of whether legal or equitable relief is sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984); *see also Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007) ("The Eleventh Amendment of the U.S. Constitution protects a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought . . . ."). This immunity extends to state agencies and state officers acting in their official capacities who act on behalf of the state. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

---

"judgment," but rather seeks relief for injuries allegedly caused by the State Defendant's conduct. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 167 (3d Cir. 2010) ("When, however, a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, Rooker-Feldman is not a bar to federal jurisdiction."). Here, arguably, the *Rooker-Feldman* doctrine could only apply to Plaintiff's clams against Judge Kilgallen, Judge Thornton, Judge Kondrup-Cohen, and McLaughlin, as those are only claims that directly relate to the judgment of divorce. However, the Complaint alleges that these Defendants intentionally discriminate against fathers in divorce and custody disputes in New Jersey's family courts. (*See* Compl. ¶¶ 67–70.) In that connection, Plaintiff claims that the Defendants intentionally deprived him of his constitutional rights to equal protection and due process under the Fourteenth Amendment by discriminating against him based on his sex and favoring Shah in their divorce proceedings. (*Id.* ¶¶ 23–24, 32–33.) In *Great Western*, the Third Circuit found that the plaintiff's section 1983 claim, which alleged that his adversaries and state court judges conspired to "engineer [plaintiff's] defeat in state court," was not barred by *Rooker-Feldman*, because the plaintiff claimed that "'people involved in the decision violated some independent right,' that is, the right to an impartial forum." 615 F.3d at 171. Similarly here, Plaintiff alleges that his injuries were caused by the State Defendants' bias towards fathers in divorce proceedings. Accordingly, *Rooker-Feldman* does not bar Plaintiff's claims.

Here, the Eleventh Amendment bars Plaintiff's claims against the New Jersey Judiciary and his claims against the Individual State Defendants in their official capacities.  It is well-established that state courts and, by extension, judges and court employees, "are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the state of New Jersey, and therefore considered 'arms of the state.'"  *Dongon v. Banar*, 363 F. App'x 153, 156 (3d Cir. 2010); *see also Robinson v. N.J. Mercer Cty. Vicinage-Family Div.*, 514 F. App'x 146, 149 (3d Cir. 2013) (affirming dismissal of claims against county court pursuant to Eleventh Amendment sovereign immunity).  Accordingly, the New Jersey Judiciary and the Individual State Defendants, in their official capacities, are immune from suit under section 1983 pursuant to Eleventh Amendment sovereign immunity.[8]

For these reasons, Plaintiff's claims against the New Jersey Judiciary and the Individual State Defendants, in their official capacities, are dismissed for lack of subject matter jurisdiction.[9]

---

[8]      Plaintiff contends that the State of New Jersey has waived its Eleventh Amendment sovereign immunity by accepting federal funds under the Child Support Recovery Act of 1992 ("CSRA"), 18 U.S.C. § 228, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794.  It is well-established that, under certain circumstances, "a state may surrender its immunity by accepting federal funds conditioned on the state's waiver of immunity, [but] mere acceptance of federal funds does not cause a state to waive its immunity to suit."  *A.W. v. Jersey City Public Schools*, 341 F.3d 234, 239 (3d Cir. 2014).  While acceptance of federal funds under the Rehabilitation Act does require state agencies to waive sovereign immunity, that waiver applies only to claims for violation of the Rehabilitation Act brought against that agency, *i.e.*, claims for discrimination on the basis of disability.  *See* 29 U.S.C. § 794(a); *see Chitester v. Dep't of Child Protection & Permanency*, No. 17-12650, 2018 WL 6600099, at *5 (D.N.J. Dec. 17, 2018) (finding that state child protection agency waived sovereign immunity for claims under the Rehabilitation Act).  Plaintiff raises no such claim in his Complaint.  Neither did New Jersey waive sovereign immunity by accepting funds under the CSRA as that statute does not require such waiver nor does Plaintiff's Complaint relate to the CSRA which sets forth criminal penalties for nonpayment of child support.  *See* 18 U.S.C. § 228.

[9]      The State Defendants also raise the related argument that they are immune from liability as they are not "persons" under section 1983.  It is well-established that the state and state entities are not "persons" for purposes of § 1983, and thus, are not amenable to suit under that statute.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Court, however, declines to

### 2.   Failure to State a Claim

#### a.   Statute of Limitations

The State Defendants argue that certain of Plaintiff's claims are barred by the statute of limitations.  The statute of limitations is an affirmative defense under Rule 8(c).  However, in the Third Circuit a limitations defense may be raised in a motion to dismiss pursuant to Rule 12(b)(6) "only if the time alleged in the state of a claim shows that the cause of action has not been brought within the statute of limitations."  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002)).  In other words, "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."  *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978).

Section 1983 has no statute of limitations of its own, but instead borrows the statute of limitations from state personal injury torts.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  Accordingly, here, Plaintiff's claims pursuant to § 1983 are governed by New Jersey's personal injury statute of limitations period, which dictates that the claim must be brought within two years of its accrual.  *See Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010).  "Under federal law, a cause of action accrues 'when the plaintiff knew or should have known of the injury upon which the action is based.'"  *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014) (quoting *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009)).

---

dismiss the claims against the State Defendants on this ground because while an individual acting in his or her official capacity cannot be sued for monetary damages under 42 U.S.C. § 1983, he or she can be sued under the statute for injunctive relief.  *See id.* at 92.  Because Plaintiff seeks both monetary and injunctive relief in his Complaint, dismissal pursuant to Eleventh Amendment sovereign immunity applies to both types of relief in this context.

Plaintiff's claims against Judge Kilgallen, Judge Thornton, and McLaughlin, in their individual capacities, are barred by the statute of limitations. Plaintiff alleges that Judge Kilgallen presided over his 2007 divorce and two post-judgment proceedings: one in 2009 in which Plaintiff objected to Shah taking their children to India for winter break and another in 2010 in which Plaintiff sought to renegotiate the financial settlement as set forth in the MSA. (Compl. ¶¶ 101–02.) Plaintiff claims that Judge Kilgallen, in presiding over these proceedings, deliberately deprived Plaintiff of his equal visitation rights. Thus, Plaintiff knew or should have known of his claims against Judge Kilgallen when the motions were denied. As the latest of Plaintiff's claims against Judge Kilgallen accrued in 2010, those claims are barred by the two-year limitations period. So too are the claims against Judge Thornton. The only claim against Judge Thornton relates to her dismissal of a 2010 motion to renegotiate the MSA filed by Plaintiff. This claim, accordingly, also falls outside the limitations period. Finally, Plaintiff's claim against McLaughlin, a Family Counseling Specialist, is related her involvement in the mediation of Plaintiff and Shah's divorce in 2007. Again, this conduct falls outside the statute of limitations.

Nevertheless, Plaintiff contends that the statute of limitations does not bar his claims because the discrimination against him has been "continuous." (Compl. ¶ 121–22.) The Court construes Plaintiff to argue that because he suffered ongoing injuries as a result of his judgment of divorce and enforcement of the MSA, these orders constituted a continuing violation of his rights. That argument, however, lacks merit. The continuing violations doctrine is an equitable exception to the limitations period, which provides that, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *Brenner v. Local 514, Unite Bhd. Of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)).

However, "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id.* at 293 (quoting *Ocean Acres Ltd. v. Care Cty. Bd. of Health*, 707 F.3d 103, 106 (4th Cir. 1983)). For example, in *Rose v. County of York*, the Third Circuit determined that the continuing violations doctrine did not apply where the plaintiff asserted a custody order and its enforcement violated his civil rights. 262 F. App'x 485, 487 (3d Cir. 2008). Rather, the Third Circuit held that plaintiff's claims arose from the alleged ill effects of the original order. *Id.* The same holds true here. The continuing violations asserted by Plaintiff are nothing more than ill effects from the JOD and MSA, rather than continuing violations of his civil rights.

Accordingly, the claims against Judge Kilgallen, Judge Thornton, and McLaughlin are dismissed with prejudice as barred by the statute of limitations.

### b. Judicial Immunity

I will also grant the State Defendant's motion to dismiss Plaintiff's claims against Judge Kondrup-Cohen, in her individual capacity, because she is entitled to absolute judicial immunity. On the other hand, Chief Justice Rabner, Hopson, and Heilman are not immune based on judicial and quasi-judicial immunity.

It is well-established "that judges are immune from suit under section 1983 for monetary damages arising from their judicial acts." *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000); *see also Mireles v. Waco*, 502 U.S. 9, 9 (1991) ("A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages."). Following the Supreme Court's guidance, the lower courts "must engage in a two-part inquiry to determine whether judicial immunity is applicable." *Gallas*, 211 F.3d at 768. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Id.* (quoting *Mireles*, 502 U.S. at 11). "Second, a judge is not immune for actions, though judicial in

nature, taken in the complete absence of all jurisdiction." *Id.* "With respect to the first inquiry, 'the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.'" *Id.* at 768–69 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). The courts must "'draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges,' such as administrative acts." *Id.* at 769 (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988)).

"With respect to the second inquiry, [courts] must distinguish between acts in the "clear absence of all jurisdiction," which do not enjoy the protection of absolute immunity, and acts that are merely in "excess of jurisdiction," which do enjoy that protection. *Id.* at 769 (citing *Stump*, 435 U.S. at 356 n.6). "A judge will not be deprived of immunity because the action [he or she] took was in error, was done maliciously, or was in excess of [his or her] authority; rather, [he or she] will be subject to liability only when [he or she] has acted in the 'clear absence of all jurisdiction.'" *Id.* (quoting *Stump*, 435 U.S. at 356–57).

Plaintiff's claim against Judge Kondrup-Coyle arises solely from her judicial conduct. Plaintiff alleges that Judge Kondrup-Coyle, in denying his motion to enforce his parental rights in November 2018, intentionally deprived him of his right to visitation with his son and "his equal rights under the Fourteenth Amendment." (Compl. ¶¶ 108–12.) Even taking as true Plaintiff's allegation that Judge Kondrup-Cohen deliberately deprived Plaintiff of his right to visitation with his son, Plaintiff makes no allegation that Judge Kondrup-Cohen acted in "clear absence of all jurisdiction." *Gallas*, 211 F.3d at 768. Accordingly, Judge Kondrup-Cohen is entitled to judicial immunity on Plaintiff's claims against her.

Chief Justice Rabner, Heilman, and Hopson, however, are not entitled to judicial immunity. Plaintiff's claims against these Defendants do not arise form acts taken in a judicial or quasi-judicial capacity. For judicial immunity to apply, a plaintiff's claims must arise from actions taken in the judge's judicial capacity. *Gallas*, 211 F.3d at 768. To determine whether an act is judicial in nature, a court must act "whether it is a function normally performed by a judge" and whether the parties "dealt with the judge in his judicial capacity." *Id.* at 768–69. It is critical to "draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges,' such as administrative acts." *Id.* at 769. Here, Plaintiff's claim against Chief Justice Rabner relates solely to his alleged inaction in response to Plaintiff's complaints regarding discrimination in New Jersey's Family Courts. That inaction was not judicial in nature, but rather a function of Chief Justice Rabner's role as the head of the courts.

Court administrators and judiciary employees, like Heilman and Hopson, who carry out activities, which are "an integral part of the judicial process" and are "charged with the duty of carrying out facially valid court orders," are also entitled to immunity and "enjoy quasi-judicial immunity from liability for damages in a suit challenging conduct prescribed by that order." *Addlespurger v. Corbett*, 461 F. App'x 82, 85–86 (3d Cir. 2012). Even when sued in their individual, rather than their official capacities, such individuals may receive the benefit of quasi-judicial immunity. *Hamilton v. Leavy*, 322 F.3d 776, 782–783 (3d Cir. 2003). Here, however, Plaintiff's claims against Hopson and Heilman do not relate to conduct "integral to the judicial process" or carrying out of a valid court order. Rather, Plaintiff's claims against them, like his claim against Chief Justice Rabner, relates solely to their administrative conduct, *i.e.*, their response to Plaintiff's claims of alleged discrimination. Accordingly, Hopson and Heilman are not entitled to quasi-judicial immunity, but the claims against them clearly lack merit.

### c.  Failure to State a Claim

Plaintiff brings claims against Chief Justice Rabner, Hopson, and Heilman under section 1983 for their "deliberate actions denying discrimination."[10]

A plaintiff may have a cause of action under section 1983 for certain violations of constitutional rights.  That section specifically provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).  Further,

---

[10]     The State Defendants additionally argue that, to the extent the Complaint may be construed to assert claims against them for violations of Titles VI or VII of the Civil Rights Act of 1964, those claims must be dismissed. Title VI provides that "[n]o person ... shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any activity of program receiving Federal financial assistance." 42 U.S.C. § 2000d.  Plaintiff, however, does not allege that he was discriminated against, excluded from participation in, or denied the benefits of any program or service, based on his race, color, or national origin.  Nor can Plaintiff proceed with a claim pursuant to Title VII, which prohibits discriminatory employment practices based upon an individual's "race, color, religion, sex, or national origin." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92–93 (2003) (citing 42 U.S.C. § 2000e-2(a)(1)) . Plaintiff does not allege that he was ever employed by, or applied for employment with, the New Jersey Judiciary in any capacity.  Accordingly, both Titles VI and VII are inapplicable to the allegations of Plaintiff's Complaint, such that the Court construes the Complaint to assert these claims.

"[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations and quotations omitted).

Here, Plaintiff's sole allegations against Chief Justice Rabner relate to a December 2018 letter that Plaintiff sent to Chief Justice Rabner complaining of "systemic discrimination against fathers" in the Monmouth County Vicinage Family Court.[11] (Compl. ¶ 19, 117–18.) Plaintiff claims that Chief Justice Rabner "denied any role" in the alleged discrimination. (*Id.* ¶ 117.) Distilling Plaintiff's claim against Chief Justice Rabner to its essence, Plaintiff contends that Chief Justice Rabner has failed to investigate and address allegations of discrimination against fathers in New Jersey's Family Courts. (*See id.* ¶¶ 117–18.) Even if these allegations could form a basis for a section 1983 claim, Plaintiff fails to allege that Chief Justice Rabner's inactions personally caused Plaintiff's injuries. *See Baraka*, 481 F.3d at 210. Plaintiff's claim against Hopson fails for the same reason. The only allegations against Hopson similarly relate to Hopson's response to a written complaint from Plaintiff regarding alleged discrimination against fathers. Plaintiff's

---

[11]     To the extent the Complaint can be construed to assert a claim for supervisory liability against Chief Justice Rabner, it similarly fails to state a claim. Generally, personal involvement by the defendant in the alleged constitutional violation is central to a § 1983 claim, and liability cannot rest on a theory of *respondeat superior*. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Rather, there are two potential theories of supervisory liability under section 1983: (1) defendants may be sued as policy makers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm,'" *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004), or (2) a supervisor may be personally liable under § 1983 if he or she "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge . . . , had knowledge of and acquiesced in his subordinates' violations." *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995). The Complaint fails to state a claim under either theory as it is devoid of any allegation that Chief Justice Rabner implemented a policy of discriminating against fathers in divorce proceedings or had knowledge of the alleged violation of Plaintiff's constitutional rights and acquiesced in those violations.

contends that Hopson's failure to address these issues violated the "Anti-Discrimination Policy of the State of New Jersey." (Compl. ¶¶ 114–15.) These allegations, however, fail to identify how Hopson was personally involved in any violation of Plaintiff's constitutional rights. As such, Plaintiff cannot state a claim for relief against either Chief Justice Rabner or Hopson.

Plaintiff's allegations against Heilman are equally deficient. Plaintiff alleges that Heilman, an ombudsman in the Monmouth County Vicinage Family Court, was copied on the letter Plaintiff sent to Hopson. (Compl. ¶ 126.) Plaintiff claims that Heilman, in response to his letter, called him and "declared that there was no discrimination." (Compl. ¶ 126.) Plaintiff speculates that the purpose of the call "was to dissuade [him] from filing any appeal or seeking relief in [the] federal courts." (*Id.*) Again, Plaintiff's allegations fail to identify how Heilman's conduct violated his constitutional rights or indicate how she was personally involved in any such violations. Accordingly, the claims against her are dismissed for failure to state a claim.

### 3. Plaintiff's Motion for Summary Judgment against Shah and Shah's Motion to Dismiss

Finally, the Court considers Plaintiff's Motion for Summary Judgment against Shah. Plaintiff contends that summary judgment on his claim against Shah is appropriate because there is no dispute of material fact that Plaintiff was "arbitrarily denied equal protection under the law" and that Shah conspired with the State Defendants to deny Plaintiff of his right to equal protection. (*See* ECF No. 12, at 1.) While Shah did not file a response to Plaintiff's motion for summary judgment, the Court construes Shah's response to the Complaint, filed in letter form, as a motion to dismiss the claims against her. (*See* ECF No. 10, at 1 (requesting that the Complaint be dismissed).)

Plaintiff has not demonstrated that he is entitled to judgment against Shah as a matter of law. In the Complaint, Plaintiff alleges that Shah deprived him of his right to equal protection

under the Fourteenth Amendment by seeking primary custody of their children in the divorce proceeding, in violation of section 1983. Plaintiff, however, cannot state a claim for relief against Shah under section 1983, let alone demonstrate that he is entitled to judgment as a matter of law. To state a claim under section 1983, a plaintiff "must establish that she was deprived of a federal constitutional or statutory right by *a state actor*." *Kach*, 589 F.3d at 646 (emphasis added). While there are certain circumstances in which a private party may qualify as a state actor, *i.e.*, if she "conspires with a state official," *Walsh v. Walsh*, 763 F. App'x 243, 246 (3d Cir. 2019), "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co–conspirator or a joint actor with the judge." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980). Here, Plaintiff, in conclusory terms, claims that Shah "aided, abetted, and conspired" with the State Defendants to violate his constitutional rights. However, Plaintiff fails to allege any facts that would demonstrate that Shah, a private individual, conspired with any of the State Defendants. Because Plaintiff has not shown that Shah is a state actor, he cannot proceed with a section 1983 claim against her. Accordingly, Plaintiff's Motion for Summary Judgment against Shah is denied and his claim against Shah dismissed.

## IV.   CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for Default Judgment against the State Defendants is **DENIED**; the State Defendants' Motion to Vacate Default is **GRANTED**; the State Defendants' Motion to Dismiss is **GRANTED**; Plaintiff's Motion for Summary Judgment against Shah is **DENIED**; and Shah's Motion to Dismiss is **GRANTED**. Plaintiff's Complaint is, therefore, dismissed in its entirety.

DATED: December 9, 2020                                  /s/ Freda L. Wolfson
                                                        Freda L. Wolfson
                                                        U.S. Chief District Judge